**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**DAVID AARON HARPER**                                                **PLAINTIFF**

vs.                                            **CIVIL ACTION NO. 2:10cv00097-WAP-SSA**

**COMMISSIONER OF
SOCIAL SECURITY**                                                   **DEFENDANT**

## REPORT AND RECOMMENDATIONS

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff David Aaron Harper for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff filed applications for POD, DIB and SSI on March 31, 2008, alleging disability beginning on December 1, 2007. Docket 8, Exhibit 6, p. 11, 14.[1] Plaintiff's claim was denied initially (Ex. 4, p. 2-5, Ex. 5, p. 2-10) and on reconsideration. Ex. 5, p. 11-18. A representative was appointed (Ex. 5, p. 28) and an administrative hearing was requested. Ex. 5, p. 19-20. Plaintiff's representative did not attend the October 23, 2009 hearing (Ex. 3, p. 26), and plaintiff proceeded without counsel.[2] The Administrative Law Judge (ALJ) issued an unfavorable decision on November 24, 2009 (Ex. 3, p. 11-18); the Appeals Council denied plaintiff's request for review on March 26, 2010. Ex. 3,

---

[1] The Administrative Record in this case is attached to the defendant's Answer at Docket Entry 8. All citations to the Administrative Record are to the Exhibit and Page Number at Docket Entry 8.

[2] Plaintiff signed a Waiver of Representation (Ex. 5, p. 50) and chose to go forward at the hearing without the assistance of a representative. Ex. 3, p. 26-27.

p. 2-4. Plaintiff obtained counsel on January 13, 2010 (Ex. 3, p. 6-7) and timely appealed to this court. The ALJ's decision is now ripe for review. The parties have not consented to have a magistrate judge conduct all the proceedings in this case, and the undersigned submits this report and recommendation to United States District Judge W. Allen Pepper.

## I. FACTS

Plaintiff was born on October 29, 1956 and was fifty-one years old at the alleged onset of his disability. Ex. 3, p. 28. He completed the eighth grade and previously worked as a machine operator in construction, a truck driver and welder, skilled jobs performed at the medium exertion level. Ex. 3, p. 28-29, 43-45. Plaintiff claimed disability beginning December 1, 2007 due to a herniated and bulging disk, arthritis of the spine and sternum, irregular heart beat, shortness of breath and seizures. Ex. 7, p. 9. He additionally contends that an allergic reaction to an epidural block caused allergies and sensitivity to heat and prevented him from considering surgery. Ex. 7, p. 9, Ex. 3, p. 38.

The ALJ determined that plaintiff suffered from "severe" impairments, including status post healed compression fracture at L4 and degenerative disc disease in lumbar spine with spondylosis[3] (Ex.3, p. 12), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[4] Ex. 3, p. 13.

---

[3]The ALJ found that the plaintiff's allergic reaction to steroid injections "would not be expected to interfere with his ability to work irrespective of age, education and work experience" and was, therefore, "nonsevere." Ex. 3, p. 13.

[4]Paragraph 4 of the ALJ's decision contained only one sentence stating his finding that the plaintiff's impairments did not meet a Listing and did not detail his specific considerations of Listings 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. Ex. 3, p. 13.

Considering the entire record, the ALJ concluded that the plaintiff retains the Residual Functional Capacity (RFC) to "lift/carry 20 pounds occasionally and 10 pounds frequently, stand/ walk 6 hours during an 8 hour period, and sit 6 hours in an 8 hour workday with occasional stooping, kneeling, crouching, crawling, climbing, and balancing." Ex. 3, p. 14. The ALJ found that "some pain and discomfort" could be reasonably expected from plaintiff's impairments but the "intensity and severity of the claimant's back pain as alleged is not well supported by the objective medical evidence." *Id.*

Based on testimony of a vocational expert [VE], the ALJ held that the plaintiff could not perform his past relevant work "because the physical demands exceed his residual functional capacity." Ex. 3, p. 15. The VE testified that with the limitations set out by the ALJ in his hypothetical, the plaintiff would be able to perform unskilled jobs performed at the light level of exertion such as parking lot attendant, assembler of small parts, vending machine attendant, cafeteria attendant and photo copy machine operator. Ex. 3, p. 45-46, 53. Considering plaintiff's age, education, work experience and RFC, the ALJ concluded that the plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and he therefore was "not disabled" under the Act. Ex. 3, p 17-18.

Plaintiff claims that he did not receive a full and fair hearing due to ineffective assistance of counsel. He claims that the ALJ failed to fully develop the record by not requesting updated medical records and a medical source statement from the plaintiff's treating physician and failed to advise the plaintiff of the importance of an updated physical examination by a physician of his choice. Docket 13, p. 12-13. Contending that the Social Security Administration's policy of restructuring the file misled the ALJ, the plaintiff further contends that he was denied a full and

3

fair hearing.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[5] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[6] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[7] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[8] At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[9] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[10] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

---

[5] *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[6] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[7] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2003).

[8] 20 C.F.R. §§ 404.1520, 416.920 (2003).

[9] 20 C.F.R. §§ 404.1520(d), 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525, 416.925 (2003).

[10] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2003).

past work experience, that he is capable of performing other work.[11] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[12]

This court is limited on appeal to determining whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Qualls v. Astrue*, 339 Fed. Appx. 461 (5th Cir. 2009), citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited powers of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[13] even if it finds that the evidence leans against the Commissioner's decision.[14] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind

---

[11] 20 C.F.R §§ 404.1520(f)(1) (1996) & 416.920(f)(1) (1996).

[12] *Muse*, 925 F.2d at 789.

[13] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[14] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

A Social Security claimant has no constitutional right to counsel, *Cornett v. Astrue*, 261 Fed. Appx. 644, 2008 WL 58822, at *6 (5th Cir. 2008), but does have a statutory and regulatory right to have counsel present at a hearing. 42 U.S.C. 406; 20 C.F.R. 404.1705; *Norden v. Barnhart,* 77 Fed. Appx. 221, 2003WL 22228387, at *1 (5th Cir. 2003). A plaintiff may waive this right if given sufficient information to enable him to decide intelligently whether to retain counsel or proceed *pro se. Hussey v. Astrue*, 2009 WL 166666, *5 (E.D. La. 2009)(Slip op.). "Sufficient information" includes explanations of the possibility of free counsel, a contingency agreement, and the limitation on attorney's fees to 25% of past due benefits awarded. *Clark v. Schweiker,* 652 F.2d 399, 403-404 (5th Cir. 1981).

At the administrative hearing, the ALJ explained to plaintiff that the hearing could be postponed to allow him time to obtain a representative or attorney.[15] When the plaintiff replied

---

[15]   ALJ: ". . . Sir, you don't have a representative. You're not required to have a representative even though you – Mrs. Stokes, I believe, was listed as a representative. I understand she's not here with you. Perhaps you wanted a representative to begin with, but my question to you right now is, do you want to go forward with this hearing with, without a representative or do you want to postpone it so you can get someone to represent you?
Plaintiff: "Well, I mean I really can't afford anybody to represent me and –"
ALJ: "All right."
Plaintiff: "– so I just –"
ALJ: "It's really up to you. The way it works, sir, the lawyers are supposed to accept these cases on a contingency basis. A contingency basis saying that they

that he could not afford an attorney, the ALJ explained contingency arrangements with limitations on fees and mentioned the possibility of free counsel. The plaintiff nevertheless elected to proceed without the assistance of counsel or a representative (Ex. 3, p. 26-27) and signed a Waiver of Representation. Ex. 5, p. 50. Although it is clear from the transcript of the hearing that the plaintiff, who only has an eighth grade education, was unfamiliar with the standards applied to determine disability and was, perhaps, frustrated with the length of time that had passed since his application, the undersigned finds that the ALJ provided the plaintiff with sufficient information to enable him to decide intelligently whether to proceed without representation.

However, even when the plaintiff waives his right to representation, "the record must disclose that there has been a full and fair hearing," *Clark v. Schweiker,* 652 F.2d 399, 404 (5th

---

> won't charge you anything unless they prevail. Social Security law allows them to get a certain percentage or a certain amount out of the back payment, not future payments, but back payment. I believe this used to be $5,200 or $300 or 25 percent, the lesser of the two. In recent years it has gone up. I believe it might be $6,000 now, but the lesser, to just back pay, but not future, 25 percent of the maximum out of 53, or I think it's $6,200 now, I mean, 6,200 now, the lesser of the two. My question to you, what you what you want to do? And, of course, there's agencies like legal services, if it's still, it's viable in this area, they represent people, too, free. So, I'm not trying to influence you one way or the other –"
> Plaintiff: "Right, I understand."
> ALJ: "– but I just, I do have to explain that to you."
> Plaintiff: "Okay."
> ALJ: "So, having said what I said –"
> Plaintiff: "Okay."
> ALJ: "– what do you desire to do?"
> Plaintiff: "I'd rather just go on with the hearing, sir."
> ALJ: "All right. . ."

Ex. 3, p. 26-27.

Cir. 1981), and the ALJ must "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The ALJ's obligation to develop the record "rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him." *Clark v. Schweiker,* 652 F.2d 399, 404 (5th Cir. 1981),

In response to the limitations set out by the ALJ in his hypothetical – which included plaintiff's work history and the ALJ's RFC but did not incorporate the plaintiff's testimony about the severity and intensity of his pain or the effects of his claimed allergies – the VE testified that the plaintiff could perform unskilled jobs performed at the light level of exertion. Ex. 3, p. 45-46, 53. At the request of the ALJ, the VE then testified that if plaintiff's testimony were found to be credible, plaintiff would not be able to perform any work because of severe pain which would affect his concentration and attention.[16] Ex. 3, p. 48.

The plaintiff claims that the ALJ did not afford him a full and fair hearing because he did not obtain a medical source statement (MSS) from his treating physician, Dr. Aziz, or request updated records from Dr. Aziz or Dr. Simmons.[17] Docket 13, p. 14-19. Although the plaintiff argues that the plaintiff received ineffective assistance of counsel because a representative would have assisted the plaintiff in obtaining the relevant records and informed him of the importance of obtaining a MSS from his doctor, (Docket 13, p. 14, 17-18) the pertinent inquiry is whether

---

[16] ALJ: "If I find his testimony to be credible, is there any work he can do?"
VE: "No, sir."
ALJ: "And what would you base that on?"
VE: "Severe pain which would affect his concentration and attention." Ex. 3, p. 48.

[17]Dr. Simmons was not listed as a treating physician on the plaintiff's disability documents and the plaintiff did not disclose Dr. Simmons name to the ALJ at the hearing. Therefore, the ALJ could not have known to request the records.

8

the ALJ satisfied his duty to develop the record and whether he should have contacted the plaintiff's treating physicians to obtain an MSS and updated medical records.

An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). "The duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a claimant's treating physician." *Hilsdorf v. Commissioner of Social Sec.*, 2010 WL 2836374, *11 (E.D.N.Y. July 15, 2010), citing *Devora v. Barnhard*, 205 F.Supp.2d 164, 172-73 (S.D.N.Y. 2002). Social Security regulations provide that "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1). The Supreme Court has reminded us that Social Security administrative proceedings are "inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 2085 (2000). "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Id. See also* Robert W. Pratt, "From the Bench: Social Security Judging," 36 *Litigation* 3, 4 (Spring 2010). Thus, where the administrative record does not contain medical records from the plaintiff's treating physician, the ALJ should at least provide a reasonable explanation for not obtaining them. *Hilsdorf v. Commissioner of Social Security*, 2010 WL 2836374, at *11 (E.D.N.Y. July 15, 2010).

A treating physician has a unique perspective regarding the plaintiff's abilities, limitations, medical history and diagnosis. The record contained medical records from Dr. Aziz

9

dated March 4, 2008 to March 21, 2008. Ex. 8, p. 20 - 32. In May 2008, the plaintiff reported to the disability office that he was scheduled to see Dr. Aziz on June 3, 2008. Ex. 7, p. 31. At the hearing on October 23, 2009, the plaintiff gave conflicting testimony about his last appointment with Dr. Aziz. He first testified that he saw Dr. Aziz in August – presumably August 2009 – and was scheduled to see him again in January 2010 (Ex. 3, p.33) but subsequently testified that he had not visited Dr. Aziz since March 2008, the date of the last medical evidence in the record from Dr. Aziz. Ex. 3, p. 50-51.

The ALJ requested documents from doctors that plaintiff listed on his disability documents[18] (Ex. 8, p. 33 - 77), obtained a physical residual functional capacity assessment from consultative physician, Dr. Hand, and requested a consultative examination with Dr. Sandifer, an orthopedic specialist.[19] Ex. 8, p. 84-85. The ALJ did not, however, request updated records from plaintiff's treating physician, Dr. Aziz, or an MSS from Dr. Aziz or any other treating physician. He, likewise, did not request additional records or clarification from Dr. Shah, from whom plaintiff sought treatment for his allergy symptoms. The administrative record contained medical records from Dr. Shah dated March 25, 2008 to March 31, 2008, an April 9, 2008 report, and prescriptions dated April 9, 2008. Ex. 8, p. 33 - 51. However, it did not contain any updated records from Dr. Shah despite plaintiff's report to the disability office that his last visit with Dr. Shah was April 25, 2008 and that he had a visit scheduled for July 2008. Ex. 7, p. 31.

---

[18]Other than consultative reports, the medical evidence contained in the record spans only from March 2008 to April 2008. Ex. 3, p. 65-77.

[19]Dr. Sandifer diagnosed the plaintiff with "[s]tatus post lumbar spine fracture L1 14 years ago and evidence of persistent sciatica right leg with history of two bulging or ruptured discs." Ex. 8, p. 84-85.

The Commissioner maintains that the ALJ fulfilled his duty to develop a reasonably complete record "because the record contained sufficient evidence for the ALJ to make an informed decision" (Docket 14, p. 13); the plaintiff, on the other hand, argues that the ALJ should have advised him that his medical records were not up to date and that he could be granted a period of time after the hearing to procure them. Docket 13, p. 23.

Plaintiff testified that his back pain – which began after a horseback riding accident in 1994 but did not affect his ability to work until 2007 (Ex. 3, p. 31 - 33) – was constant; that he could stand and walk for one hour; that he could lift 15 or 20 pounds; and that he could walk for 30 minutes to an hour using a cane. Ex. 3, p. 38-39. The plaintiff further testified that he received long-term steroid treatment for severe allergies and provided a letter from his treating physician, Dr. Shah, stating that his work should be restricted to indoors. Ex. 3, p. 50, Ex. 8, p.82. He reported his allergy – itching and hives which were exacerbated by heat – to the disability office (Ex. 7, p.31) and his medical records demonstrated that he sought treatment (Ex. 8, p. 41, 47-48) and was prescribed Benadryl and Prednizone. Ex. 8, p. 51.

The ALJ discounted the plaintiff's testimony of his severe back pain[20] and allergic reaction to an epidural injection to treat back pain. He evaluated the intensity, persistence and limiting effects of the plaintiff's back pain symptoms and found that "some pain or discomfort" is reasonably expected from his back/lumbar spine condition but the plaintiff's testimony

---

[20]The ALJ found that "Dr. Sandifer's consultative examination showed normal neurological findings except for positive straight leg raise at 60 degrees. No surgery has been recommended. There is no recent evidence in the record that the [plaintiff's] condition has worsened... There is no evidence in the record to support his testimony of standing 30 minutes to an hour... [T]here is no evidence of a medical necessity for the use of the cane... Follow up with Dr. Shah showed no residuals from his allergic reaction." Ex. 3, p. 15.

11

concerning the intensity and severity of his back pain was "not well supported by the objective medical evidence."[21] Ex. 3, p. 14. The ALJ did not address the plaintiff's allegations of allergy symptoms except to dismiss Dr. Shah's opinion as not credible because "the evidence does not support such a restriction" and "Dr. Shah did not include any clinical findings to support this opinion." Ex. 3, p. 16.

In light of the VE's testimony that the plaintiff could not work if his testimony was found to be credible, the ALJ's evaluation of the plaintiff's credibility was particularly important. An ALJ's "determination or decision [of credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. Here the ALJ relied on the consultative physician's opinions and the lack of record support in discounting plaintiff's allegations of severe pain, but did not obtain updated records from plaintiff's treating physicians or provide an explanation for discounting their opinions by performing "a detailed analysis of the treating physician's views under the criteria set forth in 20

---

[21]Given the minimal medical records, it is not surprising that the evidence contained in the record did not bolster plaintiff's testimony or the opinion of Dr. Shah. However, as the plaintiff argues, the ALJ's conclusion is contradicted by consultative physician Dr. Hand's August 18, 2008 Physical Residual Functional Capacity Assessment finding that the plaintiff's "pain is well documented." The ALJ "accept[ed] the opinion of the state agency medical consultant with respect to the exertional requirements but f[ound] additional postural limitations." Ex.3, p. 16. Like the ALJ, Dr. Hand found that the plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/ walk six hours during an 8-hour period, and sit six hours in an 8-hour workday. Ex. 8, p. 87.

12

C.F.R. § 404.1527(d)(2)."[22] *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Additionally, rather than order further examination, the ALJ explained away the plaintiff's allegations of severe allergy symptoms by noting that there were no objective cardiac, brain or opthalmological findings. Ex.3, p. 14. Referencing medical records from Dr. Shah, the ALJ found that a follow-up exam "showed no residuals from his allergic reaction." Ex. 3, p. 14. The court does not find support for this assertion in the medical records cited and finds that the ALJ failed to acknowledge plaintiff's testimony that he required treatment with prednisone for a year (Ex. 3, p. 41, 50), that he breaks out in hives (Ex. 3, p. 48) and that he swells in response to heat. Ex. 3, p. 51. The plaintiff's testimony, in combination with Dr. Shah's opinion that the plaintiff's work should be limited to indoors and record evidence of additional medical visits since the latest records on file, lend support to the plaintiff's argument that the record was not fully developed. The ALJ should have requested additional information from both Dr. Aziz and Dr. Shah before discounting their opinions.

To obtain remand for an ALJ's failure to develop the record, the plaintiff must demonstrate that he was prejudiced by the deficiencies he alleges. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The court cannot be certain that updated records and a medical source

---

[22]In *Newton*, the Fifth Circuit noted that there are several factors that the ALJ must consider before declining to give evidence of a treating physician controlling weight:
      (1) the physician's length of treatment of the claimant,
      (2) the physician's frequency of examination,
      (3) the nature and extent of the treatment relationship,
      (4) the support of the physician's opinion afforded by the medical evidence of record,
      (5) the consistency of the opinion with the record as a whole; and
      (6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d)(2).

statement from the plaintiff's treating physicians would have changed the ALJ's decision. However, the unrepresented plaintiff was clearly desperate, confused and did not know the proper questions to ask at the hearing; given the minimal record evidence the ALJ used to evaluate the plaintiff's impairments, the potential for prejudice certainly existed, and closer scrutiny was warranted. Therefore, the undersigned finds that the ALJ's decision was not supported by substantial evidence and recommends that the case be remanded for further proceedings.

The parties are referred to 28 U.S.C. § 636(b)(1)(B) and FED. R. CIV. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen (14) days of this date and "a party's failure to file written objections to the proposed findings, conclusions and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United States Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc) (citations omitted).

Respectfully submitted, this the 24th day of February, 2011.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE